IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE PLURINATIONAL<br>STATE OF BOLIVIA<br><br>c/o Sra. Ministra Elizabeth Arismendi Chumacero<br>Ministra de Defensa Legal del Estado<br>Av. Marical Santa Cruz, Edif. HANSA piso 4<br>La Paz, Bolivia<br><br>        Plaintiff,<br><br>  v.<br><br>E.T.I. EURO TELECOM<br>INTERNATIONAL N.V.<br><br>Strawinskylaan 1627<br>Amsterdam, 1077 XX<br>Netherlands<br><br>        Defendant. | DOCKET NO.<br><br>CIVIL ACTION |

## COMPLAINT

Plaintiff, the Plurinational State of Bolivia ("Bolivia" or the "State"), by and through its undersigned attorneys, Dechert LLP, brings this action against Defendant E.T.I. Euro Telecom International N.V. ("ETI") and avers as follows:

## OVERVIEW OF THE ACTION

1. In October 2009, acting entirely outside the scope of her authority, the former Bolivian Minister of Legal Affairs executed agreements which purported, among other things, to submit Bolivia to an ad hoc arbitration to resolve an ongoing dispute with ETI involving hundreds of millions of dollars, and to waive critical rights of Bolivia in connection with that dispute. ETI knows that neither of these agreements is valid; and indeed, when the only Bolivian governmental body with authority to bind the State to such terms learned of these

agreements shortly after they were executed, it expressly rejected them. Nevertheless, ETI has prosecuted the ad hoc arbitration (the "Ad Hoc Proceeding") contemplated under the unauthorized agreements continuously since that time – notwithstanding Bolivia's sustained and vehement objections.

2. Despite Bolivia's protests, the arbitrators presiding over the Ad Hoc Proceeding have failed to express any views on the validity of the agreements and, hence, their jurisdiction. Instead, on May 31, 2010, they announced that they would not rule on their jurisdiction before holding hearings on the merits of the dispute. The panel's decision to continue with the arbitration on the basis of invalid agreements has left Bolivia with no choice but to bring this action – by which it seeks declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 *et seq.* to prevent the Ad Hoc Proceeding from going forward. ETI's prosecution of the Ad Hoc Proceeding offends critical sovereign interests of the Bolivian State, and if allowed to continue, is likely to inflict irreparable harm on Bolivia – as Bolivia will be forced either to participate in the Ad Hoc Proceeding in violation of its own laws (with Bolivian officials risking civil and criminal charges for their involvement); or risk having, should the panel uphold its jurisdiction, an arbitral award entered against it without it being able to defend itself.

## THE PARTIES

3. Plaintiff Bolivia is a sovereign foreign state.

4. Defendant ETI is a corporation organized and existing under the laws of the Kingdom of the Netherlands, having its principal place of business in Amsterdam, the Netherlands.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States. Specifically, the Federal Arbitration Act confers jurisdiction on the federal courts to adjudicate certain claims, including those asserted in this action, relating to arbitration arising under the New York Convention. *See* 9 U.S.C. § 201 *et seq.* (1988). This is so even where, as here, the Plaintiff questions the validity of the ostensible submission to arbitration. The federal common law of foreign relations provides an independent basis for federal question subject matter jurisdiction in actions such as this that implicate a foreign state's vital economic and sovereign interests, or the foreign relations interests of the United States.

6.  This Court may exercise personal jurisdiction over ETI because it has sufficient contacts with the District of Columbia to establish personal jurisdiction. Specifically, ETI purported to submit the dispute underlying this action to arbitration seated in this district, and executed in this district the agreements by which it purportedly submitted the dispute to arbitration. D.C. Code § 13-423.

7.  Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) because ETI is subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the claim asserted in this action occurred in this district.

## FACTUAL BACKGROUND

8. In 1995, ETI entered into a series of agreements whereby it acquired 50% of the equity in, and managerial control of, a state-owned Bolivian telecommunications company called Empresa Nacional de Telecomunicaciones Entel S.A. ("Entel"). In 2006 and 2007, Bolivia imposed certain taxes and penalties on Entel which, ETI claims, adversely affected the value of its investment. Then in 2007, according to ETI, Bolivia took steps that led to the nationalization of ETI's shares in Entel in May 2008.

9. During the period that these events (and alleged events) took place, Bolivia and the Netherlands were party to a Bilateral Investment Treaty which provided, among other things, that each party state (1) will ensure fair and equitable treatment of the investments of nationals of the other party state; (2) will accord full protection and security to such investments; and (3) will refrain from taking any measures that would deprive investors of their investment – except where such measures are taken in the public interest and under due process of law, are not discriminatory, and are accompanied by the payment of just compensation. ETI claims that the measures taken (and allegedly taken) by Bolivia violate these and other obligations, and that Bolivia has effectively expropriated ETI's investment. Bolivia strenuously disputes these allegations.

10. In October 2007, ETI commenced arbitration proceedings against Bolivia to resolve this dispute under the auspices of the International Centre for the Settlement of Investment Disputes ("ICSID"). The proceedings were to take place before a tribunal in Washington, D.C. (such proceedings, the "ICSID Proceeding") before a panel of three arbitrators (the "ICSID Panel"). Because Bolivia had withdrawn from the treaty pursuant to which it had previously agreed to submit investment disputes to ICSID on May 2, 2007, Bolivia

objected to the jurisdiction of the ICSID Panel to adjudicate the claims asserted by ETI in the ICSID Proceeding. ETI, by contrast, argued that the ICSID Panel had jurisdiction to adjudicate the dispute.

11. Bolivia eventually agreed to participate in the ICSID Proceeding under protest, solely for purposes of challenging the ICSID Panel's jurisdiction. The ICSID Panel scheduled hearings to consider its own jurisdiction to take place starting on October 20, 2009. On October 13, 2009, shortly before those hearings were to commence (and without prior notice to Bolivia), ETI purported to commence the Ad Hoc Proceeding – raising the same claims it asserted in the ICSID Proceeding. On the same day that it purported to commence the Ad Hoc Proceeding, ETI proposed to Bolivia that the parties negotiate a transition from ICSID arbitration to the Ad Hoc Proceeding in settlement of their dispute over the ICSID Panel's jurisdiction.

12. On October 16, 2009, Bolivia's then-Minister of Legal Defense Maria Cecília Rocabado Tubert executed an agreement whereby she purported to submit Bolivia to the Ad Hoc Proceeding. (A copy of the October 16, 2009 agreement is attached as Exhibit 1.) On or about October 20, 2009, then-Minister Rocabado purported to execute a second agreement, whereby she purported to waive certain valuable sovereign rights of the Bolivian State in connection with the Ad Hoc Proceeding. (A copy of the October 20, 2009 agreement is attached as Exhibit 2.) Both of these agreements were ostensibly in settlement of the parties' dispute over the ICSID Panel's jurisdiction (the agreements, together, the "Unauthorized Settlement and Submission Agreements").

13.     At the time she entered into the Unauthorized Settlement and Submission Agreements, former Minister Rocabado's power to act on Bolivia's behalf was strictly circumscribed by the power of attorney extended to her by the President of Bolivia. (A copy of former Minister Rocabado's power of attorney is attached as Exhibit 3.) Minister Rocabado's power of attorney was identical in all material respects to that of her predecessor, former Minister of Legal Affairs Hector E. Arce Zaconeta – a copy of which was sent to ETI on September 9, 2008. (A copy of former Minister Arce's power of attorney is attached as Exhibit 4; a copy of the letter transmitting that power of attorney to ETI is attached as Exhibit 5.) Of particular relevance to this action, under her power of attorney, former Minister Rocabado had no authority to take any action on behalf of Bolivia except in connection with arbitration commenced under the auspices of ICSID. Former Minister Rocabado's power of attorney gave her no authority whatsoever to act in connection with any other type of arbitration – including any ad hoc arbitration – and most certainly did not empower her to *submit* the sovereign State of Bolivia to a non-ICSID arbitration.

14.     Further circumscribing former Minister Rocabado's authority to act on behalf of Bolivia was Supreme Decree No. 29,894 (the "Ministerial Powers Decree") – which defines the absolute scope of the powers of the Bolivian Minister of Legal Affairs. In particular, under Article 2, paragraph (j) of the Ministerial Powers Decree, former Minister Rocabado could not bind Bolivia to any agreement either submitting Bolivia to an ad hoc arbitration or resolving a dispute in connection with the ICSID Proceeding unless such agreement was both (1) approved by Bolivia's National Council for the Legal Defense of the State (the "NCLDS"), *and* (2) authorized by a Decree issued by the Bolivian President. (A copy of the Ministerial Powers Decree is attached as Exhibit 6.)

15.     Upon information and belief, ETI knew of the limitations on former Minister Rocabado's authority imposed under her power of attorney and the Ministerial Powers Decree. Regardless, ETI had a duty to know, and therefore should have known, of those limitations.

16.     The NCLDS never authorized Former Minister Rocabado to enter into the Unauthorized Settlement and Submission Agreements, nor were those Agreements ever authorized by Presidential Decree. To the contrary, the NCLDS expressly rejected the Unauthorized Settlement and Submission Agreements in a decision issued on November 10, 2009. (A copy of the November 10, 2009 decision of the NCLDS is attached as Exhibit 7.)

17.     Although Bolivia is willing to arbitrate the underlying investment dispute, it cannot do so pursuant to an unauthorized and legally invalid settlement and submission agreement. To demonstrate its willingness to arbitrate the underlying dispute, Bolivia has offered to submit the dispute to ad hoc arbitration pursuant to an agreement duly authorized by Bolivia's highest authorities – which would therefore be binding on the State. Unfortunately, ETI has refused to consider this offer.

## CAUSE OF ACTION

## COUNT I

**(For Declaratory and Injunctive Relief)**

18.     The allegations of paragraphs 1 through 17 are incorporated by reference herein as if set forth in full.

19.     Because former Minister Rocabado lacked legal authority to enter into the Unauthorized Settlement and Submission Agreements, those Agreements are void and

without effect. Accordingly, Bolivia never submitted to the Ad Hoc Proceeding ostensibly constituted as a result of the Unauthorized Settlement and Submission Agreements.

20.   A justiciable and actual controversy exists before this Court with respect to whether the Unauthorized Settlement and Submission Agreements are void and without effect, and whether or not Bolivia submitted to the Ad Hoc Proceeding constituted in ostensible compliance with those Agreements. A declaratory judgment resolving this question is likely (1) to prevent future harm to Bolivia resulting from ETI's ongoing prosecution of the Ad Hoc Proceeding, (2) to clarify or settle the legal rights of the parties to this action, and/or (3) to terminate a principal source of the insecurity and/or controversy that brought about this action.

21.   Bolivia will suffer irreparable injury unless ETI is enjoined from continuing to prosecute or participate in the Ad Hoc Proceeding, because, if such injunctive relief is not granted, Bolivia will either (1) be compelled to participate in the Ad Hoc Proceeding despite never agreeing to submit to it (with Bolivian officials risking civil and criminal charges for their involvement); or (2) risk having an illegitimate arbitral award entered against it without having an opportunity to defend itself.

22.   No adequate remedy at law exists to redress the irreparable harms Bolivia is likely to suffer if it is not awarded the injunctive relief it seeks.

WHEREFORE, Bolivia respectfully requests:

a.   A judicial declaration determining: (1) that the Unauthorized Settlement and Submission Agreements are void; and (2) that Bolivia did not submit to the Ad Hoc Proceeding ostensibly constituted as a result of the Unauthorized Settlement Agreements;

      b.    A permanent injunction to bar ETI from continuing to prosecute or participate in the Ad Hoc Proceeding; and

      c.    Such other and further relief as the Court may deem just and proper.

Dated: October 5, 2010

 

*Dennis H. Hranitzky* /CGF
Dennis H. Hranitzky
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 641-5647
dennis.hranitzky@dechert.com
(D.D.C. Bar # NY0117)

Attorneys for Plaintiff
Plurinational State of Bolivia

Of Counsel:
Anne Marie Whitesell
DECHERT LLP
1775 I Street, N.W.
Washington, DC 20006
(D.C. Bar # 982965)

Eduardo Silva Romero
Pierre Mayer
Jose-Manuel Garcia Represa
DECHERT (PARIS) LLP
32 rue de Monceau
75008 Paris, France

Joshua W.B. Richards
DECHERT LLP
2929 Arch Street
Philadelphia, PA  19104